**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| JUAN BRITO<br><br>           Plaintiff,<br><br>     v.<br><br>PRECISION LAMINATE WORKSHOP, INC.<br>d/b/a Precision Countertops<br><br>a Virginia corporation,<br><br>     Serve: John C. Bazaz, Esq., Registered Agent<br>            Law Offices of John C. Bazaz, PLC<br>            4000 Legato Road, Suite 1100<br>            Fairfax, VA 22033<br><br>and MICHAEL MARKOGIANNAKIS<br><br>           Defendants | JURY TRIAL DEMANDED<br><br><br>Case No.:   1:17cv93  (LMB/MSN) |

## COMPLAINT

**Preliminary Statement**

1. Plaintiff brings this suit against his former employers: Precision Laminate Workshop Inc., doing business as Precision Countertops ("Precision Countertops"), and its president Michael Markogiannakis.

2. Plaintiff's claims arise from Defendants' failure to pay minimum and overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA").

3. The Court has subject-matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question). The court has

subject-matter jurisdiction over the state-law breach-of-contract claim because it is so closely related to the federal-law claims as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

4. The Court has personal jurisdiction over Defendants because Defendants are domiciled in and do business in Virginia, and because the events or omissions giving rise to Plaintiff's claims occurred there.

5. Venue is proper in the Eastern District of Virginia because both Defendants reside there, and because the events or omissions giving rise to Plaintiff's claims occurred there. *See* 28 U.S.C. § 1391(b)(1)-(2).

## **PARTIES**

6. Defendant Precision Laminate Workshop, Inc. is a Virginia corporation that fabricates, delivers, and installs countertops in and around Virginia, Maryland, and Washington, D.C. It does business under the name "Precision Countertops."

7. Precision Countertops' principal place of business is in Fairfax County, at 4215-J Walney Road, Chantilly, VA 20151, where the company maintains a fabrication warehouse and an administrative office.

8. On information and belief, the gross annual business volume of Precision Countertops exceeded $500,000 at all relevant times.

9. Defendant Michael Markogiannakis is an officer and a director of Precision Countertops. He is the company's president. On information and belief, he is a resident of Fairfax County.

10. On information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

11. Plaintiff Juan Brito is an adult resident of Fairfax County, Virginia.

## FACTS

### Plaintiff's Work Generally

12. Plaintiff Juan Brito worked for Precision Countertops from about May 25, 2016 to about September 19, 2016. His principal duties included fabricating, delivering, and installing countertops.

13. Defendant Michael Markogiannakis was the person who hired Mr. Brito, who set his work schedule and compensation, who instructed him in his daily duties on a day-to-day and hour-by-hour basis, who calculated and paid his wages, and who kept records of the hours he worked and the wages he was paid.

14. Mr. Markogiannakis was typically present at the warehouse for all or most of each work day.

15. Mr. Markogiannakis had the power to discipline workers, including firing them. He could also dock their pay. For example, on one occasion when Mr. Brito was out working with a group of men delivering and installing countertops, the company vehicle received a parking ticket. In response, Mr. Markogiannakis docked Mr. Brito's pay $100.

16. Mr. Brito worked five days a week.

17. About two days a week, Mr. Brito would work at the warehouse the whole day. On these "warehouse days" he worked a set schedule, from 6:00 a.m. to 2:30 p.m., with a half-hour break.

18. About three days a week, Mr. Brito would work away from the warehouse, delivering and installing countertops in and around Virginia, Maryland, and Washington D.C. On these days, his work hours varied: he would start each day at 6:00 a.m. and would work until

between about 5:00 p.m. to 7:00 p.m. Mr. Brito was supposed to receive a half-hour break on these days as well, though he was often unable to take this break.

### Pay Practices and Pay Problems

19. Defendants supposedly tracked their employees' start and stop times using an automated punch-clock system. However, Mr. Markogiannakis's secretary would often tell Mr. Brito not to "punch in" when he arrived to work, either because the punch-clock was not working or because she told Mr. Brito that she would just note his arrival time that day by hand.

20. On the three days each week when Mr. Brito was out delivering and installing countertops, he would not return to the warehouse until after its closing time. He was thus unable to "punch out" on those days, because he did not have after-hours access to the administrative office where the punch-clock was kept.

21. Defendants knew that the punch-clock was inaccessible to workers like Mr. Brito who regularly finished working after the office was closed. Therefore Defendants knew or should have known that the hours recorded by the punch-clock were incorrect.

22. Mr. Brito's first day of work was on or around May 25, 2015. He was supposed to be paid every two weeks. However, Defendants did not pay Mr. Brito any wages at the end of his first pay period. When Mr. Brito asked Mr. Markogiannakis when he was to receive his first paycheck, Mr. Markogiannakis said that he would not be paying Mr. Brito any wages for his first two weeks of work because they were considered unpaid "training."

23. Mr. Brito did not receive his first paycheck until July 1, 2016—over a month after he started working for Precision Countertops.

24. Defendants paid Mr. Brito by check. Along with his paychecks, Defendants issued Mr. Brito a paystub identifying the start and end dates of the pay period, the total hours worked in the

pay period, and the pay rate then in effect, among other things. Defendants also issued Mr. Brito "Timecard Reports" purporting to show the hours that Mr. Brito had worked on each day of the pay period.

25. Mr. Brito infers from his paystubs and timecard reports that he was not paid for approximately eight days of work that that he performed between May 25–June 3, 2016.

26. When Mr. Brito was hired, Mr. Markogiannakis and Mr. Brito agreed that Mr. Brito's pay rate would be $15.00 per hour. The paystubs that Mr. Brito received with his first two paychecks reflect this agreed-upon rate.

27. Starting with his third paycheck, however, Mr. Brito's paystubs show that Defendants unilaterally started paying him at $12.00 an hour. Mr. Brito was not notified of and did not agree to this unilateral pay cut.

28. Mr. Brito's timecard reports show that Defendants automatically deducted a thirty-minute lunch break from his paycheck every day that he worked. However, on the three days each week when Mr. Brito worked outside of the warehouse doing delivery and installment work, he was often unable to take some or all of his break.

29. Mr. Brito's paychecks regularly failed to compensate him for all of the hours he worked during the three days each week that he worked outside of the warehouse doing delivery and installment work. On average, he would work about 12 hours per day on each of these three days, but his timecard reports show him rarely—if ever—working more than eight. Thus, he worked about 12 hours off-the-clock each week.

30. The last paycheck that Mr. Brito received was on September 9, 2016. The paystub that accompanied the check showed that it was meant to compensate Mr. Brito for the pay period of August 13–26, 2016.

31. Mr. Brito's last day of work at Precision Countertops was September 19, 2016. He quit because he was frustrated with not receiving his pay.

32. Mr. Brito never received compensation for his last 16 days of work.

33. After Mr. Brito stopped working at Precision Countertops, he called Mr. Markogiannakis, asking to be paid for the last 16 days of work he performed. Mr. Markogiannakis told him that he had mailed Mr. Brito's paycheck. But no paycheck ever arrived.

34. After weeks of not receiving payment for his work, Mr. Brito returned to Precision Countertops' office to inquire about his unpaid wages. Mr. Markogiannakis refused to pay Mr. Brito anything, stating "I am not paying you for the week that you quit. You worked a few days, and then you quit. I am not paying you for the few days just because you worked."

## **CLAIMS**

### **Fair Labor Standards Act, 29 U.S.C. §§ 201–219**

35. At all times relevant to this action:

    a. Juan Brito was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1);

    b. Defendants were Juan Brito's "employers" within the meaning of 29 U.S.C. § 203(d);

    c. Defendants "employed" Juan Brito within the meaning of 29 U.S.C. § 203(g); and

    d. Juan Brito was engaged in commerce, or was employed by Defendants in an enterprise engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

### **Claim 1:**

### **Failure to Pay Overtime Compensation**
### **29 U.S.C. § 207**

36. Mr. Brito worked over 40 hours each workweek, except for his first and last workweeks.

6

37. Defendants failed to pay Mr. Brito a time-and-a-half overtime premium for all the hours that he worked beyond 40 in a workweek.

38. By failing to pay Mr. Brito an hourly time-and-a half overtime premium, Defendants violated the FLSA's overtime provision, 29 U.S.C. § 207.

### Claim 2:

### Failure to Pay Minimum Wages
### 29 U.S.C. § 206

39. Defendants were required to pay Mr. Brito at least $7.25 for each hour that he worked in a given workweek.

40. Defendants did not pay Mr. Brito any wages at all for his first eight days or his last 16 days of work. This violated the minimum-wage provision of the FLSA.

### Claim 3:

### Breach of Contract
### (Against Defendant Precision Countertops Only)

41. Mr. Brito reached an agreement with Defendant Precision Countertops whereby Mr. Brito would perform countertop fabrication, delivery and installation work for the company in exchange for a $15.00-per-hour hourly wage.

42. Employment contracts were thus formed under Virginia law.

43. The company failed to pay Mr. Brito at the bargained-for rate for all the work he performed, breaching the contract.

44. As a result of the company's breach, Mr. Brito suffered damages.

## **REQUESTED RELIEF**

Wherefore, Mr. Brito respectfully requests that this court provide the following relief:

45. Award Mr. Brito his actual damages under the FLSA, jointly and severally against all Defendants, in the amount of all unpaid minimum wages, in an amount to be proved at trial but currently estimated to be at least $1,809.60.

46. Award Mr. Brito his actual damages under the FLSA in the amount of all unpaid overtime compensation, jointly and severally against all Defendants, in an amount to prove at trial;

47. Award Mr. Brito an additional amount as liquidated damages equal to his unpaid minimum wages and overtime, jointly and severally against all Defendants, pursuant to 29 U.S.C. §216(b);

48. Award Mr. Brito his costs and reasonable attorney's fees, as provided by the Fair Labor Standards Act, 29 U.S.C. § 216(b), jointly and severally against all Defendants;

49. Award Mr. Brito his contract damages under Virginia law against Defendant Precision Laminate Workshop Inc. only; and

50. Any other relief the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Nicholas Cooper Marritz                                    Date: January 25, 2017
Nicholas Cooper Marritz (VA Bar No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450
F: (703) 778-3454
E: nicholas@justice4all.org
*Attorney for Plaintiffs*